In re Carlos J. KLUTTS, Cynthia Klutts, Debtors.

UNITED STATES of America (INTERNAL REVENUE SERVICE), Plaintiff,

v.

Carlos J. KLUTTS, et al., Defendants.

Bankruptcy No. 96–11577FM.
Adversary No. 96–1178FM.

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

Nov. 17, 1997.

---

Ramona Notinger, U.S. Dept. of Justice-Tax Div., Dallas, TX, for I.R.S.

Rebecca McElroy, Maroney, Crowley & Bankston, Austin, TX, for Klutts Land, Inc.

## MEMORANDUM OPINION

FRANK R. MONROE, Bankruptcy Judge.

The Court held a hearing on July 7, 1997, on the Motion of Klutts Land, Inc. to Dismiss ("Motion"). On June 26, 1997, Klutts Land, Inc. filed a Notice of Intent to Present Matters Outside the Pleadings Re: Adversary Complaint and Request that 12(b)(6) Motion by Treated as One for Summary Judgment ("Request"). The IRS failed to respond and the Court granted the Request. At the conclusion of the hearing the Court made findings on the record of those facts established by summary judgment evidence. The Court took one legal issue under advisement. Counsel for both parties were requested to file briefs on that issue. To date no briefs have been received from either counsel. Therefore, the Court has conducted its own independent legal research on the issue. This Memorandum Opinion is issued as a statement of material facts that are not in genuine dispute and conclusions of law under Bankruptcy Rule 7056. In addition, those findings stated on the record are incorporated herein by reference as well.

### *Facts not in Genuine Dispute*

Klutts Land, Inc. is a Texas corporation which was incorporated on May 5, 1969, by Alvis Vandygriff, Frank Scolfield and James K. Presnal. From the inception of the corporation, Barney C. Klutts and Hazel Joyce Klutts (the "Parents" of Debtor Carlos J. Klutts) have been members of the board of directors. Mr. Klutts is the president and registered agent for the corporation. Mrs. Klutts is the secretary/treasurer. There are no other officers. Neither of the Debtors, Carlos Klutts or his wife, Cynthia, have ever been on the board of directors, nor have they ever been officers of Klutts Land, Inc. Barney and Joyce Klutts, the sole shareholders of Klutts Land, Inc., formed it for the purpose of buying, selling, and developing real estate. This is the only business the corporation has been involved in since its inception. The Debtors have never owned any interest in Klutts Land, Inc.

On March 1, 1991, Debtor's Parents purchased 68.93 acres of land situated in the Francis Berry Survey, A–2, in Caldwell County, Texas from the Debtors ("Tract One"). The consideration paid for the purchase was the assumption of the Debtors' first lien indebtedness owed to Victoria Bank and Trust as successor in interest to First

National Bank of San Marcos which was then in the approximate amount of $192,000.

Subsequently, on May 2, 1991, Debtor's Parents negotiated a payoff of that debt; and, in fact, they did pay it off with their personal funds thereby securing a release of the lien.

On January 15, 1993, Klutts Land, Inc. purchased in the ordinary course of its business Lot 20, Stratford Place, in Travis County, Texas from Sage Land Company ("Tract Two"). The settlement statement reflects that the purchase price paid for this property was $105,000. There is no dispute that the Debtors had no part in the purchase of this property by Klutts Land, Inc.

On October 19, 1993, Klutts Land, Inc. transferred Tract Two to the Debtor's Parents in exchange for Tract One. The issues of equal consideration or gain on the transaction are not material for purposes of this Memorandum Opinion. The IRS alleges it had an enforceable lien on Tract One on the date that the Debtor's Parents purchased the property from the Debtors, March 1, 1991, and that their lien is enforceable against Tract One in the hands of Klutts Land, Inc. However, it was not until February 10, 1992, that the IRS filed its *first* tax lien of record against the Debtors, Carlos and Cynthia Klutts.

On December 2, 1993, the Debtor's Parents created the Stratford Place Trusts, and named Mr. Alan Bergstrom as Trustee. They then transferred Tract Two into that trust. The beneficiaries of the trust are the Debtors and the Debtors' children. The extent of the IRS claim against Tract Two is not an issue in Klutts Land, Inc.'s Motion and is not dealt with herein.

## Issue

Did the IRS have a lien on Tract One it can enforce against Klutts Land, Inc.?

## Conclusions of Law

The *first* lien *filed* of record by the IRS against the Debtors was on February 10, 1992, almost *one year after* the Debtors sold Tract One to Debtor's Parents for an effective consideration of $192,000.

The IRS, however, contends that the transfer from the Debtors to the Debtor's Parents was a fraudulent transfer and that, therefore, the Debtors were the legal owners of Tract One at the time the *first* federal tax lien was filed. But, the IRS failed to submit any summary judgment evidence on that issue. Their argument is, therefore, totally devoid of any substantiation or merit as we shall more fully illustrate later.

Next, the IRS argues that pursuant to 26 U.S.C. § 6321[1] a lien attached to Tract One while the Debtors owned it, and that under 26 U.S.C. § 7425 notice of the transfer of that property had to be given to the United States or the lien followed the property as a matter of law.[2]

There is no dispute that the first federal tax lien *filed of record* was filed long after the date that the Debtors sold Tract One to the Debtor's Parents. The IRS did not favor us with the date of their alleged § 6321 lien; but, even assuming its existence of March 21, 1991, subsequent purchasers for value, without notice, would acquire title to the property

---

1. Section 6321 states,

   "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."
   26 U.S.C. § 6321.

2. Section 7425 states in pertinent part,

   "(3)27 a sale of property on which the United States has or claims a lien, or a title derived from enforcement of a lien, under the provisions of this title, made pursuant to an instrument creating a lien on such property, pursuant to a confession of judgment on the obligation secured by such an instrument, or pursuant to a nonjudicial sale under a statutory lien on such property—
   (1) shall, except as otherwise provided, be made subject to and without disturbing such lien or title, if notice of such lien was filed or such title recorded in the place provided by law for such filing or recording more than 30 days before such sale in the manner prescribed in subsection (c)(1) ..."
   26 U.S.C. § 7425(b).

free from it. Thus, it is clear that the entire success of the IRS's argument hinges on whether or not the Debtors' sale of Tract One to the Debtor's Parents was fraudulent.

The Fifth Circuit has held that if a taxpayer transfers property prior to the time a tax lien arises, the United States may set aside the transfer *if it is fraudulent under the law of the state where the property is located.* *United States v. Jones,* 631 F.Supp. 57 (W.D.Mo.1986) citing, *United States v. Kaplan,* 277 F.2d 405, 408 (5th Cir.1960) (emphasis added).

The Court in *Jones* looked to applicable Missouri state law and found several "badges of fraud", i.e. (1) the taxpayers had transferred almost all of their assets at a time when they were facing three different foreclosure actions and federal tax liens, (2) the transfers occurred at a time when the taxpayers were insolvent, (3) the consideration was less than one-sixth the purchase price of two years before, (4) the transfer was subject to a secret trust in favor of the debtors and their son, and (5) the debtors had unlimited use of the property and bore substantially all the responsibilities of ownership.

As in Missouri, Texas has adopted the Uniform Fraudulent Transfer Act. In pertinent part, it states that a transfer is fraudulent as to present and future creditors if,

".... the debtor made the transfer or incurred the obligation:

(1) *with actual intent to hinder, delay, or defraud* any creditor of the debtor; or

(2) *without receiving a reasonably equivalent value* in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." (emphasis added).

Tex. Bus. & Com.Code Ann. § 24.005 (Vernon Supp.1997).

Thus, if reasonably equivalent value is not paid for the property *or* if actual intent to hinder, delay, or defraud established, then the transfer is fraudulent.

Even though the Texas statute provides two alternative grounds for inferring a fraudulent transfer, none of the cases the Court has researched, including the Texas cases, have treated inadequate consideration as a separate grounds for inferring fraudulent transfer. They have considered inadequate or no consideration as merely one element in proving fraudulent intent, i.e. an "indicia of fraud".

Thus, the Fifth Circuit in applying Texas law has stated,

"[w]hen several of these indicia of fraud are found, they can be the proper basis for an inference of fraud ... Such indicia of fraud, we stated, include (1) *the debtor's transfer of valuable property without consideration;* (2) a close personal relationship between the parties to the conveyance; (3) the debtor's retention of possession and indicia of ownership of the property; and (4) the debtor's transfer of all of his property, especially if to different members of his family, leaving him unable to pay his debts." (citations omitted) (emphasis added).

*Roland v. U.S.,* 838 F.2d 1400, 1402 (5th Cir.1988).

In *Roland* the taxpayers had transferred their home to themselves and to their 15 year old son as Trustee's of a "church" existing solely on paper, without consideration. Proceeds from a subsequent sale of their home were then used to purchase property in Detroit, Texas. The deed of trust to that property listed the son as buyer. However, the taxpayers made the mortgage payments, and lived continuously on the property while their son remained in Irving to finish high school. The Rolands also paid or helped their son pay the taxes, utility bills, and the insurance on the Detroit property. No rental income was ever reported by the son. Although the taxpayers did not transfer all of their assets, the Fifth Circuit found that the facts were

sufficient indicia of fraud and upheld the right of the IRS to levy on the property to satisfy back taxes.

Once these indicia of fraud are shown, and the presumption of fraud arises, then the burden shifts to the defendant to establish that the transfer was not fraudulent. *U.S. v. Kaplan*, 277 F.2d 405, 408–9 (5th Cir.1960).

Here the IRS must, therefore, establish a presumption of fraud. If they have failed to do so, then the case is ripe for summary judgment. *BMG Music v. Martinez*, 74 F.3d 87, 90 (5th Cir.1996).

In *BMG* the Fifth Circuit held that,

"[i]ntent to defraud, however, can be decided as a matter of law. For example, summary judgment is appropriate in 'intent to defraud' cases when the defendant admits the fraud, the conveyance instrument is fraudulent on its face, the defendant retains an interest in the property inconsistent with the conveyance alleged, or the evidence indisputably reveals that the transfer was made without an intent to defraud."

*BMG*, 74 F.3d at 90.

Thus, the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits on file (none were filed by the IRS) must show pursuant to the Texas fraudulent transfer statute (1) actual intent of the debtors to hinder, defraud or delay or, in the alternative, (2) that reasonably equivalent value was not received for the property. If they do not, but instead indisputably reflect that the transfer was made without an intent to defraud, then the matter is ripe for a motion for summary judgment.

■ Here, the IRS has shown neither actual intent or lack of adequate consideration. In fact, the IRS has produced no evidence at all.

First, there is no evidence that property was sold for other than a reasonably equivalent value. The Debtor's Parents gave valuable consideration for the property. They assumed the first lien indebtedness on the property in the amount of $192,000, which indebtedness they later paid in full. No

evidence has been produced by the IRS to show that the property was actually worth more than $192,000. Thus, this indicia of fraud does not exist.

Secondly, the IRS has not established an intent to defraud. The only *possible* indicia of fraud present is that the Debtors (1) sold the property to their paternal parents in 1991 for good and valuable consideration, (2) that the paternal parents conveyed that property to a corporation they owned in trade for a different piece of property almost 2½ years later in 1993, and (3) 6 weeks later the paternal parents placed Tract Two into a trust for the Debtors and their children. This does not, without more, create *even* a fact issue.

The undisputed facts establish that the 1991 sale of Tract One was an arms-length transaction. There is no evidence that the Debtor's Parents had knowledge of the, as of yet, unrecorded IRS tax lien. There is no evidence that the Debtor's Parents had knowledge that the Debtors owed the IRS any money. There is no evidence that the Debtors were rendered insolvent by this transaction. There is no evidence that this was a transfer of all or nearly all of the Debtors' assets. There is no evidence that this was a conveyance in anticipation of suit. The transfer documents contained no unusual clauses. Lastly, there was no retention of possession by the Debtors or any incidents of ownership of Tract One.

The IRS has failed miserably to come forward with even a scintilla of evidence to support their bold allegations.

The Fifth Circuit has stated that,

"summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant' ".

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (citing *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir.1993)).

Rule 56(c) governs summary judgments. Summary judgment must be rendered *forthwith* if,

"the pleadings, depositions, answers to interrogatories, and admissions on file, to-

gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Rule 56(c) of the Federal Rules of Civil Procedure.

Once the moving party has met this burden by establishing an absence of a genuine issue of material fact, as they have here, it is incumbent upon the non-moving party to submit "competent summary judgment evidence" that there is indeed a "material factual dispute". *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir.1997) citing *McCallum Highlands, Ltd. v. Washington Capital Dus. Inc.*, 66 F.3d 89, 92 (5th Cir.1995) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)(en banc)).

Moreover,

"[u]nsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986)."

*Clark*, 110 F.3d at 297.

The IRS has failed to meet their required burden.[3] In fact, they have failed to submit *any* competent summary judgment evidence to controvert the movant. Klutts Land, Inc. has, on the other hand, met their burden of proof by establishing that no genuine issue of material facts exists and that they are entitled to summary judgment as a matter of law.

---

3. The non-movant's burden was discussed at length by the Fifth Circuit in *Little v. Liquid Air Corp.*, 37 F.3d at 1075. The Fifth Circuit said, "[t]his burden is not satisfied with 'some metaphysical doubt as to the material facts,' *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356 by 'conclusory allegations', *Lujan*, 497 U.S. at 871–73, 110 S.Ct. at 3180, by 'unsubstantiated assertions,' *Hopper v. Frank*, 16 F.3d 92 (5th Cir.1994), or by only a 'scintilla' of evidence, *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir.1994)".